UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LA TOYA R.,[1] | ) |
| | ) |
|     *Plaintiff*, | ) |
| | ) |
|     v. | )   No. 1:22-cv-00371-JMS-MPB |
| | ) |
| KILOLO KIJAKAZI, *Commissioner of the Social Security Administration*, | ) |
| | ) |
|     *Defendant*. | ) |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

In October 2017, La Toya R. protectively filed for supplemental security income ("SSI") and disability insurance benefits ("DIB") from the Social Security Administration ("SSA"), alleging a disability onset date of April 1, 2016. [Filing No. 8-8 at 41-53.] Her applications were denied initially, and upon reconsideration. [Filing No. 8-2 at 24; Filing No. 8-6 at 40-53.] In April 2020, La Toya R. again applied for SSI and DIB. [Filing No. 8-5 at 2-8; *see also* Filing No. 8-5 at 11-28.] Her applications were denied initially on June 12, 2020, and upon reconsideration on September 25, 2020. [Filing No. 8-5 at 11-28; Filing No. 8-5 at 35-48.] On October 20, 2020, La Toya R. requested a hearing regarding her second set of applications. [Filing No. 8-5 at 53-54.] On June 15, 2021, a hearing was held before Administrative Law Judge Gladys Whitfield (the "ALJ"). [Filing No. 8-3 at 2-42.] The ALJ issued a decision on September 10, 2021, concluding that La Toya R. was not entitled to benefits. [Filing No. 8-2 at 21-40.] The Appeals Council denied review on December 20, 2021. [Filing No. 8-2 at 2-4.] On February 22, 2022, La Toya R.

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

1

timely filed this civil action asking the Court to review the denial of benefits, according to 42 U.S.C. § 1383(c)(3) and 42 U.S.C. § 405(g). [Filing No. 1.]

# I.
## STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits . . . to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence: (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or

equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original).[2] "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the [Commissioner] to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). However, courts have the statutory power to affirm, reverse, or modify the SSA's decision, with or without remanding the case for further proceedings, and this power includes the ability to remand the case with instructions for the Commissioner to calculate and award benefits to the

---

[2] The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in most respects relevant to this case. For the sake of simplicity, this Entry generally contains citations to DIB sections only.

3

applicant. *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing 42 U.S.C. § 405(g)). "An award of benefits is appropriate, however, only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Id.*

## II.
### BACKGROUND

La Toya R. was 43 years of age on her alleged onset date. [*See* Filing No. 8-8 at 41.] She attended college, has a certificate in medical terminology, and previously worked in customer service at call centers, as a driver for IndyGo, in retail, and as a caretaker at a child care facility. [Filing No. 8-3 at 8-18.][3]

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that La Toya R. was not disabled. [Filing No. 13-2 at 30-51.] Specifically, the ALJ found as follows:

- At Step One, La Toya R. had not engaged in substantial gainful activity[4] since April 1, 2016, the alleged onset date. [Filing No. 8-2 at 27.]

- At Step Two, La Toya R. had the following severe impairments: "migraines; degenerative disc disease of the cervical, thoracic, and lumbar spines, status post surgery with radiculopathy; lower extremity paresthesia; scoliosis; and tendinopathy and acromioclavicular (AC) joint disease of the right shoulder." [Filing No. 8-2 at 27-28.]

- At Step Three, La Toya R. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 8-2 at 28-29.]

---

[3] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

- After Step Three but before Step Four, La Toya R. had the RFC to perform "light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift and carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk and sit for about 6 hours in an 8-hour workday with normal breaks. She can never climb ladders, ropes, or scaffolds, kneel, crouch, or crawl. She can occasionally climb ramps and stairs, balance, and stoop. She can frequently reach forward and to the side, handle, and finger. She can occasionally reach overhead, push, and/or pull. She can never operate foot controls. She is limited to a noise level of no more than level 3, moderate. She cannot be exposed to strobe or flashing lights in the ordinary course of business. She should avoid exposure to excessive vibration. She should avoid more than occasional exposure to environmental irritants such as fumes, odors, dust, gases, and poorly ventilated areas. She should avoid all use of hazardous moving machinery and should avoid exposure to unprotected heights. She cannot drive or operate a motorized vehicle to perform the functions of a job." [Filing No. 8-2 at 29-33.]

- At Step Four, La Toya R. was unable to perform any past relevant work. [Filing No. 8-2 at 33.]

- At Step Five, considering La Toya R.'s age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that La Toya R. can perform, including fundraiser II, survey worker, and marker II. [Filing No. 8-2 at 33-34.]

### III.
### DISCUSSION

La Toya R. requests that the Court reverse the denial of her claim for benefits because the ALJ erred by: (1) independently interpreting objective medical evidence without submitting it to a medical expert for review; and (2) failing to adequately account for limitations resulting from her migraines despite finding them to be a severe impairment. [Filing No. 11 at 14-24.] The Court discusses each argument in turn, but first addresses the scope of La Toya R.'s claim.

**A. Scope of La Toya R.'s Claim**

In her decision, the ALJ noted that the SSA previously found in connection with La Toya R.'s 2017 applications for benefits that she was not disabled. [Filing No. 8-2 at 24.] The ALJ found that "the issue of disability from May 1, 2013 through October 31, 2019, has been addressed

and the doctrine of res judicata applies." [Filing No. 8-2 at 24.] The ALJ further noted that because La Toya R. alleges an onset date during this time period in her current application, her application "is construed as an implied request for reopening the claimant's prior applications," but "there is no reason" to do so. [Filing No. 8-2 at 24.]

In her brief, La Toya R. notes the ALJ's application of res judicata to limit her claim to the time period of October 31, 2019 forward, but does not challenge that finding. Accordingly, the Court will only consider whether La Toya R. is entitled to benefits for the period of October 31, 2019 forward.

### B. Whether the ALJ Erred by Independently Interpreting Objective Medical Evidence Without Submitting it to a Medical Expert for Review

La Toya R. argues that in June 2020, non-examining state agency physician Dr. Shayne Small found that she only has one severe impairment, vascular insult to the brain, and opined that she could perform medium work with frequent climbing, balancing, stooping, kneeling, crouching, and crawling but needed to avoid concentrated exposure to noise and pulmonary irritants. [Filing No. 11 at 14.] She notes that in September 2020, non-examining state agency physician Dr. Joshua Eskonen relied on two imaging studies from September 2020 (a brain MRI and a cervical spine MRI) and found that she only had the severe impairment of migraines and that she could perform light work due to her history of a stroke, among other limitations. [Filing No. 11 at 14-15.] La Toya R. argues that at the time of Dr. Small's and Dr. Eskonen's review, the only lumbar spine imaging was from x-rays from May 2018,[5] which "showed postsurgical changes including the

---

[5] Although La Toya R. refers to this x-ray as taking place in March 2018, the lumbar spine x-ray upon which La Toya R. relies actually took place in May 2018. [Filing No. 8-13 at 36.] The Court assumes La Toya R. made a typographical error and means to point to the May 2018 x-ray instead of a March 2018 x-ray, and will refer to that x-ray as the May 2018 x-ray to avoid confusion.

6

Harrington rods[6] and the possibility of intervertebral osteoarthrosis," but a lumbar spine MRI from October 2020 – the month after Dr. Eskonen's review of the record – showed "grade 1 spondylolisthesis at L3-4, possible arachnoiditis, and abutment of the exiting L3 nerve root."[7] [Filing No. 11 at 15.]  La Toya R. points to a complete spine CT in January 2021 "showing degenerative changes," and argues that it indicated her condition had worsened since a September 2020 cervical spine MRI and "could not have been accounted for by either of the state agency consultants."  [Filing No. 11 at 16.]  La Toya R. contends that the ALJ noted the October 2020 lumbar spine MRI and the January 2021 complete spine CT, but "did not seem to understand their significance or how they might support the greater functional limitations alleged by [La Toya R.]." [Filing No. 11 at 16-17.]  She asserts that the ALJ's finding that greater limitations were not warranted due to La Toya R.'s normal strength and gait is "problematic given that [her] treatment has largely focused on migraine headaches."  [Filing No. 11 at 17.]  La Toya R. argues that in order for the ALJ to disregard the newer imaging and positive clinical findings and conclude that the RFC was appropriate, the ALJ needed to step into the role of a medical expert, which is inappropriate.  [Filing No. 11 at 17-18.]  She asserts that remand is required so that the ALJ can obtain the opinion of a medical expert regarding the new imaging and craft a new RFC.  [Filing No. 11 at 19.]

---

[6] A Harrington rod is "a surgical implant used to stretch the spine in order to correct abnormal curvature."  http://222.spine-health.com/glossary/harrington-rod (last accessed December 5, 2022).

[7] Spondylolisthesis is a spinal condition that "occurs when one of [the] vertebrae…slips out of place onto the vertebra below it."  http://www.my.clevelandclinic.org/health/diseases/10302-spondylolisthesis (last accessed December 5, 2022).  Arachnoiditis is "a rare pain disorder caused by inflammation of the arachnoid, one of the membranes that surrounds the nerves of [the] spinal cord."  http://www.my.clevelandclini.org/health/diseases/12062-arachnoiditis (last accessed December 5, 2022).

In response, the Commissioner argues that the RFC findings were more favorable than the findings of the only medical experts to evaluate La Toya R.'s exertional abilities. [Filing No. 13 at 12.] She asserts that La Toya R. did not produce any opinion from a treating provider that conflicts with the state-agency doctors' findings, and that it was her burden to prove a disability and develop the record. [Filing No. 13 at 13.] The Commissioner notes that La Toya R. was represented by counsel, and that her counsel never asked the ALJ to hire another expert to analyze the records, but "[i]nstead…waited until this claim was in federal court to insist that the ALJ had to retain another medical expert to assess the record because in this case, like in virtually every case, [La Toya R.] produced medical records after the final state-agency medical findings were completed." [Filing No. 13 at 13-14.] The Commissioner argues that an ALJ does not "play doctor" by merely weighing the medical evidence when determining a claimant's RFC, and that the ALJ appropriately considered the imaging and the physical examination findings, including that La Toya R. walked normally, had full strength in her legs, and had normal deep tendon reflexes. [Filing No. 13 at 16-17.] The Commissioner notes that the ALJ adequately weighed the January 2021 complete spine CT in light of the fact that La Toya R. did not claim disability based on a neck condition, did not describe limitations related to her neck in her initial report to the agency, and did not mention problems related to her cervical spine at the June 2021 hearing. [Filing No. 13 at 17.] She asserts that, in any event, La Toya R. has not shown that the January 2021 imaging showed significant worsening from the 2018 and 2020 imaging, both of which were considered by state-agency physicians, and that La Toya R.'s "own *post-hoc*, lay say-so does not meet her burden to compel the ALJ to *sua sponte* hire another expert." [Filing No. 13 at 17.] The Commissioner also asserts that the ALJ acknowledged La Toya R.'s reduced sensation in her left leg and found lower extremity numbness to be a severe impairment. [Filing No. 13 at 18.] Finally,

8

she contends that even if La Toya R. had proven more limitations, remand is not warranted because sedentary work is the most limited and the VE testified that someone limited to sedentary work and with La Toya R.'s limitations could still perform a significant number of jobs in the national economy. [Filing No. 13 at 18.]

In her reply, La Toya R. argues that the ALJ's RFC finding was not more favorable to her because the ALJ ultimately found that she was not disabled, and that the ALJ is not a medical expert so cannot properly assess appropriate limitations based on the medical evidence. [Filing No. 14 at 2.] She asserts that the fact that she had minimal functional performance does not "translate into the ability to sustain work," and that her burden was to produce evidence and not medical opinions. [Filing No. 14 at 2.] La Toya R. reiterates her argument that she produced imaging showing worsening of her condition, which required the ALJ to seek a new medical expert opinion. [Filing No. 14 at 5-6.] Finally, she argues that even if further limitations were justified and she were limited to a sedentary job – of which there are a significant number in the national economy – she might still be limited to less than a full range of sedentary work, and a new hearing on remand with medical expert testimony "can fill in the gaps here, providing a reliable expert interpretation of the impact of that new evidence indicative of worsening." [Filing No. 14 at 6.]

As the Seventh Circuit has instructed, "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). Specifically, an ALJ may not "interpret 'new and potentially decisive medical evidence' without medical scrutiny." *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) (quoting *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014)). For example, an ALJ may not conclude, without medical input, that a claimant's most recent test results are "consistent" with the ALJ's conclusions about the claimant's impairments. *McHenry*, 911 F.3d at 871 (citation omitted);

9

*see also Back v. Barnhart*, 63 Fed. App'x 254, 259 (7th Cir. 2003) (explaining that typical cases of an ALJ impermissibly "playing doctor" involve either "reject[ing] a doctor's medical conclusion without other evidence," or "draw[ing] medical conclusions themselves about a claimant without relying on medical evidence").

Further, the ALJ has a duty to develop a full and fair record to facilitate a determination of disability. *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). As a general matter, an ALJ is not required to order a consultative examination, but she may do so if medical evidence of a claimed impairment is not sufficient or if a consultative examination is otherwise necessary. 20 C.F.R. § 416.912; 20 C.F.R. § 416.917; 20 C.F.R. § 416.945(a)(3); *Skinner v. Astrue*, 478 F.3d 836, 844 (7th Cir. 2007). Generally, the "court gives deference to an ALJ's decision about how much evidence is sufficient to develop the record fully and what measures (including additional consultative examinations) are needed in order to accomplish that goal." *Poyck v. Astrue*, 414 Fed. App'x 859, 861 (7th Cir. 2011) (citing *Nelms*, 553 F.3d at 1098).

The Seventh Circuit has held, however, that "[a] consultative examination is normally required if the evidence is ambiguous, if specialized medical evidence is required but missing from the record, or if there is a change in a condition but the current severity of the impairment is not established." *Poyck*, 414 Fed. App'x at 861. Thus, failure to submit new and potentially decisive medical evidence to medical scrutiny can constitute reversible error because it allows the ALJ to impermissibly play doctor, which the Seventh Circuit has emphasized is a "clear no-no." *Goins*, 764 F.3d at 680. The burden is on the claimant to introduce some objective evidence that further development of the record is necessary, particularly if the claimant is represented by counsel. *Poyck*, 414 Fed. App'x at 861 (citing *Skinner*, 478 F.3d at 844). "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand.

10

Instead, a claimant must set forth specific, relevant facts – such as medical evidence – that the ALJ did not consider." *Nelms*, 553 F.3d at 1098 (quotation and citation omitted).

The two imaging studies that took place after the latest consultative examiner opinion – the October 2020 lumbar spine MRI and the January 2021 complete spine CT – showed changes in La Toya R.'s condition. Her May 2018 lumbar spine x-ray showed "[p]ostsurgical changes in the thoracolumbar spine," "a Harrington rod with the lower attachment on the left side at the L2 level," a "shorter rod…in the lower thoracic spine," "[s]igns of all of the laminectomy in the upper lumbar spine," "[s]uspicion for intervertebral osteoarthrosis," "normal alignment between the vertebral bodies in the lumbar spine," "[n]o other bony abnormalities visualized," "[n]o signs of fracture," and "[n]ormal intervertebral disc heights." [Filing No. 8-13 at 36.] Over two years later, in October 2020, a lumbar spine MRI showed "neural foraminal encroachment on the left with abutment of the existing L3 nerve root," "[a]n annular disc bulge [with] clumping of the nerve roots anteriorly," "Grade 1 spondylolisthesis at L3-4," and a "[s]uggestion of arachnoiditis." [Filing No. 8-16 at 3.] Further, her September 2020 cervical spine MRI showed "moderate bilateral neural foraminal stenosis" at C4-5 and "moderate to severe bilateral neural foraminal stenosis" at C5-6. [Filing No. 8-15 at 21.] The January 2021 complete spine CT then showed "[m]ultilevel degenerative disc disease and spondylosis, with mild spinal canal stenosis at C4-5 and C5-6 and ventral spinal cord flattening at these levels," "[s]evere left C7-T1 and moderate to severe left C5-6 neural foraminal stenoses, with other lesser foraminal stenoses," and "[a]dditional degenerative disc disease and facet arthropathy." [Filing No. 8-16 at 32.]

The record does not reflect an analysis of the October 2020 and January 2021 imaging studies by a medical expert. The ALJ noted the results of the two imaging studies in her opinion, [Filing No. 8-2 at 31], but did not discuss them further in her explanation of how she crafted La

11

Toya R.'s RFC, [*see* Filing No. 8-2 at 31-33].  She referenced the October 2020 lumbar spine MRI again in her discussion, stating that La Toya R. "suffers from multilevel degenerative disc disease of the cervical, thoracic, and lumbar spines, status post surgery," [Filing No. 8-2 at 33], but did not otherwise explain how, or if, she factored the more recent imaging into La Toya R.'s RFC.

The Court rejects the Commissioner's argument that the ALJ weighed the two more recent imaging studies, rather than "playing doctor."  The October 2020 and January 2021 imaging studies reflect worsening or at least different conditions than those in the May 2018 x-ray and the September 2020 MRI.  Given that, and the fact that over two years had passed between the May 2018 lumbar spine x-ray and the October 2020 lumbar spine MRI, the Court finds that the ALJ should have consulted a medical expert regarding whether the October 2020 and January 2021 imaging studies warranted a more restrictive RFC.

The Court is guided by the Seventh Circuit's decision in *Goins*, 764 F.3d at 680.  In that case, two consulting state-agency physicians reviewed the claimant's medical records and concluded that the claimant was able to work full time.  *Id.* at 678-79.  A subsequent MRI revealed degenerative disc disease, stenosis, and a Chiari malformation that had not appeared on the earlier MRI that was submitted to the state-agency physicians as part of the medical records they were asked to review.  *Id.*  The ALJ did not seek the opinion of an additional physician regarding the results of the second MRI, and found that the claimant was not disabled, thereby denying the requested benefits.  *Id.* at 679.  The Seventh Circuit reversed and remanded the case, stating that "[t]he [ALJ's] critical failure, however, was the failure to obtain a medical report on the results of the [most recent] MRI," because the results of the MRI were otherwise unaccounted for in the records that formed the basis of the expert opinions on which the ALJ relied.  *Id.* at 681-82.  The Seventh Circuit concluded that this was reversible error because the failure to submit new and

12

potentially decisive medical evidence to medical scrutiny allowed the ALJ to impermissibly play doctor.  *Id.* at 680.

As with the ALJ in *Goins*, the ALJ here "summarized the results of the [new imaging], noting [what it revealed]…, made no effort to compare [it] with the earlier [imaging], and…did not use the report of the results of [the new imaging] as an aid to evaluating" La Toya R.'s limitations.  *Id.*  The Court also notes that while the ALJ appears to discount some of the medical records because La Toya R. "had normal muscle strength and a normal gait" during "most exams," [Filing No. 8-2 at 33], she relied primarily upon records from medical exams that took place before the more recent imaging, [*see* Filing No. 8-2 at 33 (ALJ relying upon Filing No. 8-11 at 28 (records from July 24, 2018 emergency room visit); Filing No. 8-12 at 54 (records from April 9, 2018 visit with Dr. Rachael Holliday); and Filing No. 8-14 at 36 (records from February 18, 2020 visit with Dr. Jaison Grimes)).]  The remaining record to which the ALJ refers, while from April 20, 2021 and reflecting that La Toya R.'s strength was normal at the visit, also shows that she was seeing the doctor for tingling and numbness in her hands, that she had called 911 a few days before because her right hand was so painful, and that she was suffering from peripheral neuropathy. [Filing No. 8-19 at 40-41.]  The findings regarding La Toya R.'s strength and gait from before the most recent imaging cannot be relied upon to discount the findings from the later imaging, and the incidental finding at the April 2021 appointment that her strength was normal does not discount the fact that she was being seen for neuropathy.

The bottom line is that the ALJ should have enlisted a medical expert to interpret the October 2020 lumbar spine MRI and the January 2021 complete spine CT, rather than simply summarizing and then ignoring them.  While the Commissioner argues that the new imaging did not necessarily reflect a worsening condition, that was not a call for the ALJ to make.  The issues

13

La Toya R. was having, including numbness and tingling, are reflected in her records, and occurred around the time of the new imaging. It was the ALJ's responsibility – and not La Toya R.'s – to enlist a medical expert. *See Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000) (the ALJ must "summon a medical expert if that is necessary to provide an informed basis for determining whether the claimant is disabled"). The ALJ's failure to do so here requires remand.[8]

### C. Whether the ALJ Erred by Failing to Adequately Account for La Toya R.'s Migraines

La Toya R. argues that the only elements in her RFC that seem connected to her migraines are that she is limited to no more than a moderate noise level, no exposure to strobe or flashing lights "in the ordinary course of business," and no more than occasional exposure to environmental irritants. [Filing No. 11 at 19.] She asserts that these limitations address "the bare minimum of environmental factors to avoid triggering some types of migraines," and do not adequately address her migraines because she sometimes has to lie down and may get a migraine "without the presence of an incredibly obvious trigger like a flashing light or smoke or a loud noise." [Filing No. 11 at 21.]

In response, the Commissioner argues that the migraine-related limitations in the RFC track the findings of the medical experts – both Dr. Small and Dr. Eskonen found that La Toya R.'s migraines would be accommodated by avoiding concentrated exposure to noise and fumes, odors,

---

[8] The Commissioner's argument that the ALJ's RFC finding was more limiting than the findings of the only medical experts to evaluate La Toya R.'s exertional abilities misses the mark. The point is that those experts did not have the benefit of reviewing the October 2020 and January 2021 imaging, so their findings were not an adequate basis for the RFC. Additionally, the Court rejects the Commissioner's argument that the Vocational Expert testified that even if La Toya R. was limited to sedentary work, there would be jobs in the national economy that she could perform. Without knowing how a medical expert would view the new imaging, and how and if the ALJ would factor in that view, it is impossible to tell whether the ALJ would also find La Toya R. capable of performing sedentary work without further restrictions.

14

dusts, gases, and poor ventilation. [Filing No. 13 at 6-7.] The Commissioner notes that La Toya R. did not provide any opinions from a treatment provider contradicting the opinions of Dr. Small or Dr. Eskonen. [Filing No. 13 at 7.] The Commissioner asserts that La Toya R. is really challenging the reasonableness of the ALJ's finding that La Toya R.'s subjective testimony was not persuasive, and that the Court can only reverse the ALJ's finding if the ALJ was patently wrong. [Filing No. 13 at 7-8.] The Commissioner points to the ALJ's discussion of why she was not crediting La Toya R.'s testimony regarding her migraines, and argues that La Toya R. has not shown that the ALJ's reasoning was patently wrong. [Filing No. 13 at 7-11.]

In her reply, La Toya R. argues that "[t]here is no connection between a negative brain MRI [relied upon by the ALJ to discount La Toya R.'s complaints] and the severity of migraines"; "[n]on-compliance [with recommended treatment] alone is not the sole factor for assessing credibility"; and "it is insufficient for the ALJ to merely list a claimant's daily activities as substantial evidence to reject a claimant's subjective complaints because minimal daily activities like doing household chores, grocery shopping, and babysitting do not establish a person is capable of engaging in substantial physical activity." [Filing No. 14 at 9 (quotations and citations omitted).]

La Toya R.'s challenge to the ALJ's RFC finding related to her migraines is really two-fold: first, she argues that the RFC's limitations do not properly account for her migraines; and second, she challenges the ALJ's finding that her statements about her migraine symptoms were inconsistent with the medical evidence. Because the Court has already found that remand is required due to ALJ's failure to consult a medical expert regarding the new imaging studies, it will not discuss the migraine-related issues in depth. It notes two things, however. First, the RFC's limitations to a noise level of no more than 3; no exposure to strobe or flashing lights in the ordinary

15

course of business; no excessive vibration; and only occasional exposure to environment irritants such as fumes, odors, dust, gases, and poorly ventilated areas track the assessments by Dr. Small and Dr. Eskonen. [*See* Filing No. 8-4 at 9 (Dr. Small finding that La Toya R. should avoid concentrated exposure to noise, fumes, odors, dusts, gases, and poor ventilation because she has been diagnosed with migraines); Filing No. 8-4 at 33 (Dr. Eskonen making the same findings).] The only evidence to which La Toya R. points that may have suggested additional limitations were needed is statements from La Toya R. herself.

That brings the Court to its second point. The ALJ based its conclusion that La Toya R.'s complaints were inconsistent with the medical evidence on the fact that La Toya R. was able to perform significant activities of daily living and that, while Toradol injections provided relief for her migraines, she "was not compliant with other treatments recommended by her neurologist." [Filing No. 8-2 at 32.] The ALJ also noted that a September 2020 brain MRI was "unremarkable," and that a referral to pain management was denied due to "prior inappropriate behavior and nonadherence to medical recommendations by the pain management physician." [Filing No. 8-2 at 32.] On remand, the ALJ should re-evaluate its reasoning for downplaying La Toya R.'s migraine complaints and ensure that the reasoning is complete. In particular, the ALJ is cautioned not to equate the ability to perform activities of daily living with the ability to work. *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). Additionally, the Court does not find the fact that La Toya R.'s brain MRI was normal to be inconsistent with her suffering from migraines. Finally, the ALJ should further explain how La Toya R. was non-compliant with migraine treatment and how that affected the ALJ's RFC determination.

## IV.
### CONCLUSION

For the foregoing reasons, the Court **REVERSES** the ALJ's decision denying La Toya R. benefits for the period from October 31, 2019 forward, and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence 4) as detailed above. Final Judgment will issue accordingly.

Date: 12/5/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**